174 P.3d 95 (2007)
IBF, LLC, Respondent,
v.
Carmen HEUFT, and all other tenants, Appellant.
No. 58408-1-I.
Court of Appeals of Washington, Division 1.
July 23, 2007.
Publication Ordered November 26, 2007.
*97 Scott R. Peterson, Attorney at Law, Seattle, WA, Gerald Francis Robison, Attorney at Law, Burien, WA, for Appellant.
Michael S. Cullen, Attorney at Law, Everett, WA, for Respondent.
APPELWICK, C.J.
¶ 1 This case involves a commercial landlord-tenant relationship between Carmen Heuft, tenant, and IBF, LLC, landlord. Heuft did not pay rent for three months. IBF served her with a three-day unlawful detainer notice. Nine days later, it served her with a summons and complaint for an unlawful detainer action. Heuft asserts that under the terms of her lease, IBF failed to comply with the unlawful detainer statute, and consequently, the trial court lacked jurisdiction. She complains that the court improperly granted and conducted two show cause hearings. She also contends that the trial court erred when it ordered a writ of restitution because IBF posted the incorrect type of bond. Finally, she assigns error to the trial court's denial of her motion for Civil Rule (CR) 11 sanctions, as well as the calculation of the money judgment entered against her. Because we find that IBF failed to comply with the notice terms in the lease and under the unlawful detainer statute, we vacate the judgment of the trial court.

FACTS
¶ 2 IBF, LLC leased a commercial space to Carmen Heuft to run a beauty shop. Heuft did not pay rent for the months of January, February, and March of 2006. On March 22, 2006, IBF personally delivered a three-day notice pursuant to RCW 59.12.030(3) to pay rent or quit the premises. Because Heuft did neither, she was personally served on March 31, 2006, with a summons and complaint alleging unlawful detainer. This summons and complaint was filed with the court on April 11, 2006.
¶ 3 IBF sought a show cause hearing as to why a writ of restitution should not be issued against Heuft. This hearing took place on April 21, 2006. At that hearing, Heuft submitted a lease, which she claimed required a ten-day notice before IBF could file an unlawful detainer action. The commissioner stated in her findings that "UNDER [chapter] 59.12, [RCW] THE TIME FRAMES FOR SERVICE APPEAR TO HAVE BEEN MET. NOTICE TIME FRAMES HAVE NOT BEEN MET UNDER THE TERMS OF THE LEASE." IBF offered to *98 comply with the ten-day notice. However, after the hearing, IBF learned that this "proffered lease" varied from the signed lease. IBF sought a second show cause hearing, before which IBF's counsel filed a declaration stating that the "signed lease" governed the parties. Heuft's motion in opposition to the second show cause hearing was denied by the trial court, and the hearing proceeded.
¶ 4 At that hearing, counsel for IBF presented a different lease than the one originally offered by Heuft. In order to distinguish between the two during the hearing, the commissioner asked the parties to refer to Heuft's lease as the "proffered" lease, and IBF's lease as the "signed" lease. Although the parties argue about which lease controls, both the "proffered" lease and the "signed" lease contain 10-day notice provisions. The "signed" lease reads:
Provided, always, and these presents are upon this condition, that is the lessee shall be in arrears in the payment of said rent for a period of ten days after the said rent becomes due . . . and such default shall continue for ten days or more after written notice of such failure or neglect shall be given to lessee . . . the lessor . . . without demand or notice, may enter into and upon said demised premises and . . . repossess.
¶ 5 The "proffered" lease reads:

Events of Default. The occurrence of one or more of the following events shall constitute a material default in breach of this Lease by Tenant:
. . .
(b) Failure by Tenant to make any payment required as and when due, where such failure shall continue for a period of ten (10) days after written notice from Landlord;
¶ 6 The commissioner found that the "unsigned lease proffered at a prior hearing by defendant's counsel on April 21, 2006 as the lease agreement of the parties is now admitted to have never been signed by the parties nor reflective of their agreement." The commissioner found that the property was "subject to a Lease agreement dated March 29, 2004," which was attached to the declaration of Scott Peterson. This was the "signed lease." The commissioner found that Heuft failed to take appropriate action or vacate the property in accordance with the three-day notice served by IBF under RCW 59.12.030(3). Accordingly, the commissioner ordered a judgment against Heuft in the amount of $3,225.39 in back rent plus $18.33 in rent for each day she remained on the premises, a $163.73 water bill and $1,102 in attorney fees and costs. Additionally, the commissioner's order required IBF to post a $10,000 bond in order to seek a writ of restitution. A $10,000 sheriff's bond was posted, a writ was issued, and Heuft was evicted. Heuft timely appeals.

ANALYSIS
I. Mootness
¶ 7 First, IBF argues this case is moot because Heuft is not seeking possession. Heuft argues that because the commissioner ordered a money judgment and attorney fees against her, she still has a monetary stake in the action, and this case is not rendered moot.
¶ 8 "A case is technically moot if the court cannot provide the basic relief originally sought, or can no longer provide effective relief." Josephinium Assocs. v. Kahli, 111 Wash.App. 617, 622, 45 P.3d 627 (2002) (quoting Snohomish County v. State, 69 Wash.App. 655, 660, 850 P.2d 546 (1993)). But an unlawful detainer action is not moot simply because the tenant no longer has possession of the premises. Housing Auth. v. Pleasant, 126 Wash.App. 382, 388, 109 P.3d 422 (2005) (citing Lochridge v. Natsuhara, 114 Wash. 326, 330, 194 P. 974 (1921)). If the tenant does not concede the right of possession, she has the right to have the issue determined. Id. at 389, 109 P.3d 422. Further, if a tenant has a monetary stake in the outcome of the case, such as payment of rent and attorney fees, our Supreme Court has held that "[o]bviously, [such a] case is not moot." McGary v. Westlake Investors, 99 Wash.2d 280, 284, 661 P.2d 971 (1983).
¶ 9 IBF relies on this court's holding in Josephinium, in which we concluded that an unlawful detainer action was moot because *99 the tenant voluntarily vacated the apartment. 111 Wash.App. at 622, 45 P.3d 627. However, Heuft did not vacate voluntarily. See Pleasant, 126 Wash.App. at 388, 109 P.3d 422 (distinguishing Josephinium because there the tenant vacated the apartment voluntarily). Further, Heuft is arguing that the process of her eviction was improper, and therefore there is no basis for the eviction, the judgment against her or for the attorney fees award. Because the court entered a monetary judgment against Heuft, which went beyond the mere issue of possession, this case is not moot.
II. Notice
¶ 10 Chapter 59.12 RCW governs unlawful detainer actions and creates a special, summary proceeding for the recovery of possession of real property. See Housing Auth. v. Terry, 114 Wash.2d 558, 563, 789 P.2d 745 (1990), (citing Wilson v. Daniels, 31 Wash.2d 633, 643-44, 198 P.2d 496 (1948)). A tenant unlawfully detains property "[w]hen he or she continues in possession . . . after a default in the payment of rent, and after notice in writing requiring in the alternative the payment of the rent or the surrender of the detained premises. . . . [and the request] has remained uncomplied with for the period of three days after service thereof. The notice may be served at any time after the rent becomes due." RCW 59.12.030(3). The unlawful detainer statute does not contain a complete rule for calculating specific deadlines, but defers to the civil rules to provide the rules of practice. Christensen v. Ellsworth, 134 Wash.App. 295, 299, 139 P.3d 379 (2006) rev. granted 160 Wash.2d 1010, 161 P.3d 1026 (2007). Under CR 3(a), "[a] civil action is commenced by service of a copy of a summons and complaint or by filing a complaint." Christensen, 134 Wash.App. at 300, 139 P.3d 379; CR 3(a); CR 4. Under CR 6, the day of service is excluded from the designated period. Christensen, 134 Wash.App. at 301, 139 P.3d 379. CR 6 only excludes weekends and legal holidays from the computation of time if the time prescribed is less than seven days. CR 6.
¶ 11 The unlawful detainer statute is strictly construed in favor of the tenant. See Terry, 114 Wash.2d at 563, 789 P.2d 745. "Failure to comply with the notice requirement defeats the court's jurisdiction over the action"  "an action that is commenced before expiration of any applicable notice period is premature and does not confer unlawful detainer jurisdiction." Housing Auth. v. Silva, 94 Wash.App. 731, 734, 972 P.2d 952 (1999); see also Sowers v. Lewis, 49 Wash.2d 891, 894, 307 P.2d 1064 (1957); Kessler v. Nielsen, 3 Wash.App. 120, 123, 472 P.2d 616 (1970). While substantial compliance with notice is sufficient, notice must also be sufficiently particular and certain so as not to deceive or mislead. See Provident Mutual Life Ins. Co. v. Thrower, 155 Wash. 613, 285 P. 654 (1930) (substantial compliance suffices); Codd v. Westchester Fire Ins. Co., 14 Wash.2d 600, 605, 128 P.2d 968 (1942) (notice must be particular). Lastly and importantly, "[w]hen a tenant contracts with his landlord for a notice period longer than the statutory period, he is entitled to the full time stated just as he is under the statute." Community Invs. v. Safeway, 36 Wash.App. 34, 38, 671 P.2d 289 (1983) (finding no unlawful detainer jurisdiction when the lease contained a 20-day opportunity to cure but the landlord filed its complaint only 19 days after giving notice of default).
¶ 12 The "signed lease" shows that rent was due on the first of each month. Heuft failed to pay rent for the months of January, February and March of 2006. On March 22, 2006, Heuft received a notice that she had three days to pay rent or quit the premises. However, under the terms of the "signed lease," she was entitled to ten-days notice before she would need to pay rent or quit the premises. Just as in the Community Invs. case, the signed lease here clearly referenced the unlawful detainer statute by inclusion of the phrase "and such default shall continue for ten days or more after written notice of such failure or neglect shall be given to lessee." See Community Invs., 36 Wash.App. at 38, 671 P.2d 289.[1] As such, *100 when IBF served Heuft with a summons and complaint for unlawful detainer on March 31, 2006, which was only nine calendar days after Heuft received notice, it did not comply with the notice period to which Heuft was entitled. Although IBF did not file its complaint with the court until twenty calendar days after giving Heuft notice, it misled her by serving the summons before the ten-day notice period expired. Because compliance with service procedures is jurisdictional, we conclude that the trial court lacked jurisdiction. The judgment against Heuft is vacated.
III. Show Cause Hearings
¶ 13 Heuft argues that because the Legislature has provided for show cause hearings in residential unlawful detainer actions, its failure to provide for show cause hearings in general unlawful detainer actions indicates that such hearings are not available. Alternatively, Heuft asserts the right to have witnesses testify at her show cause hearing in order to satisfy due process. The trial court, in denying Heft's motion in opposition to the show cause hearing, found that landlords have more than one option to proceed with an action, including the use of a show cause hearing.
¶ 14 As noted above, chapter 59.12 RCW governs unlawful detainer actions in general, and does not explicitly require show cause hearings. RCW 59.12.090. In contrast, the Residential Landlord-Tenant Act requires a show cause hearing, giving the tenant an opportunity to assert legal or equitable defense of setoffs to dispute the landlord's right to restitution:
At the time and place fixed for the hearing of plaintiff's motion for a writ of restitution, the defendant, or any person in possession or claiming possession of the property, may answer, orally or in writing, and assert any legal or equitable defense or set-off arising out of the tenancy. If the answer is oral the substance thereof shall be endorsed on the complaint by the court. The court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer, and if it shall appear that the plaintiff has the right to be restored to possession of the property, the court shall enter an order directing the issuance of a writ of restitution. . . .
RCW 59.18.380.
¶ 15 "If the court finds that the plaintiff does not have the right to repossess the property it will enter an order directing the parties to proceed to trial within 30 days of the complaint and answer." Meadow Park v. Canley, 54 Wash.App. 371, 374, 773 P.2d 875 (1989). "A show cause hearing is not the final determination of the rights of the parties in an unlawful detainer action." Carlstrom v. Hanline, 98 Wash.App. 780, 788, 990 P.2d 986 (2000). Instead, show cause hearings are summary proceedings to determine the issue of possession pending a lawsuit. Meadow Park, 54 Wash.App. at 374-75, 773 P.2d 875.
¶ 16 While it is understandable that a party may be surprised by the use of a show cause hearing in a commercial landlord-tenant dispute, nothing in the statute indicates the court may not allow a show cause proceeding. Arguably a show cause hearing affords procedural protection to a commercial tenant, by allowing him or her the opportunity to object before eviction rather than be merely relegated to suing on the bond for damages. Here, Heuft did not seek these protections, but because IBF sought a show cause hearing, she was given the opportunity to take advantage of this additional due process. Her argument that she should have received even more due process by being allowed to question witnesses is not an issue for this court to decide. The question of whether to take live testimony or to decide the matter on the basis of declarations is at the discretion of the trial court  even an *101 opportunity to object via filing declarations provides more procedural protections for the tenant than an eviction without a show cause hearing. The procedural requirements of these hearings are best decided by local court rules.
The trial court's decision to hold the show cause hearing but not to take witnesses was not an abuse of discretion and was not error.
IV. Appropriate Bond
¶ 17 RCW 59.12.090, Writ of Restitution-Bond, reads:
The plaintiff at the time of commencing an action of forcible entry or detainer or unlawful detainer, or at any time afterwards, may apply to the judge of the court in which the action is pending for a writ of restitution restoring to the plaintiff the property in the complaint described, and the judge shall order a writ of restitution to issue. . . . but before any writ shall issue prior to judgment the plaintiff shall execute to the defendant and file in court a bond in such sum as the court or judge may order. . . . conditioned that the plaintiff will prosecute his action without delay, and will pay all costs that may be adjudged to the defendant, and all damages which he may sustain by reason of the writ of restitution having been issued, should the same be wrongfully sued out.

¶ 18 IBF argues that because the trial court conducted a show cause hearing, no bond was required in order for the trial court to issue a writ of restitution. But because RCW 59.12.090 controls issuing writs of restitution  not the statute governing show cause hearings  IBF's argument fails. Here, the bond only indemnified the sheriff conducting the eviction. The bond would not have covered Heuft's costs and attorney fees should future findings determine that the eviction was wrongful. The parties do not cite to any cases in which a sheriff's bond has been posted rather than a bond indemnifying the defendant, and research has produced no other conclusive answers. Based on the statutes, we conclude that because the bond posted by IBF only indemnified the sheriff, and not Heuft, the trial court erred when it issued the writ of restitution to evict Heuft from the premises.
V. CR 11 sanctions
¶ 19 Heuft argues that IBF's attorney should be sanctioned because he pre-signed and certified the summons and complaint for the unlawful detainer action before Heuft's notice period was officially over and did not timely consult the lease.
¶ 20 CR 11 provides, in part, that:
. . . [t]he signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . .
¶ 21 "The reasonableness of an attorney's inquiry is evaluated by an objective standard." Bryant v. Joseph Tree Inc., 119 Wash.2d 210, 220, 829 P.2d 1099 (1992).
Complaints which are "grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" are not "baseless" claims, and are therefore not the proper subject of CR 11 sanctions. The purpose behind the rule is to deter baseless filings, not filings which may have merit.
Id. at 219-220, 829 P.2d 1099. A complaint must lack a factual or legal basis before it can become the proper subject of CR 11 sanctions. Id. Even then, "the court cannot impose CR 11 sanctions unless it also finds that the attorney who signed and filed the complaint failed to conduct a reasonable inquiry *102 into the factual and legal basis of the claim." Id.
¶ 22 Here, IBF's counsel signed and certified the pleadings in IBF's unlawful detainer action on Monday, March 27, 2006. The three-day notice had been served on the preceding Wednesday, March 22. Under CR 6, neither the day of service nor weekend days are counted when the period of time prescribed is three days or less. IBF's counsel should have waited until Tuesday, March 28, to certify the pleadings. Because he did not, the statement that "more than the allotted time has elapsed since the service of said notice" was not factually true.
¶ 23 However, IBF did not actually serve Heuft with the summons and complaint until March 31. IBF did not file its summons and complaint with the court until twenty days after it gave Heuft three-days' notice. Further, IBF did not seek a writ of restitution until a full 30 days after it gave Heuft three-days' notice. Counsel should not have certified the pleading until the third day. But because he did not file the pleading until well after the first day, his early signature did not adversely impact Heuft. We decline to impose CR 11 sanctions in this case.
VI. Water Turnoff Bill
¶ 24 Heuft challenges the inclusion of a $163.73 water bill in the trial court's findings of fact. This court reviews challenges to findings of fact for sufficiency of the evidence. Josephinium, 111 Wash.App. at 621-22, 45 P.3d 627. "The record must contain sufficient evidence to persuade a rational, fair-minded person of the truth of the premise in question." Id. During the May 16 show cause hearing, IBF's counsel referred to the water bill by saying "they received just recently a water bill shutoff notice of $163.73. So we are seeking judgment for the unpaid rent to date, the unpaid water bill, the attorney's fees and costs for having to proceed for a writ of restitution." This is the only reference to the water bill  IBF does not designate the bill in the record, nor was any documentation found after review of the record. There was no briefing that as a matter of law, the landlord is liable for such a bill. This evidence is not sufficient such that a rational person could conclude that IBF was billed for water shutoff. We conclude that the evidence was not sufficient to support inclusion of the water shutoff bill in the final judgment.
VII. Attorney Fees
¶ 25 Both parties contend that because they should prevail, they are entitled to attorney fees under the terms of both leases. RCW 4.84.330 provides:
In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.
¶ 26 "[A] prevailing party is generally one who receives a judgment in its favor." Scoccolo Constr. v. City of Renton, 158 Wash.2d 506, 521 145 P.3d 371 (2006) (citing Schmidt v. Cornerstone Inv. Inc., 115 Wash.2d 148, 164, 795 P.2d 1143 (1990)). Moreover, "[a] contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal." Reeves v. McClain, 56 Wash.App. 301, 311, 783 P.2d 606 (1989) (citing West Coast Stationary Eng'rs Welfare Fund v. Kennewick, 39 Wash.App. 466, 694 P.2d 1101 (1985)).
¶ 27 While the signed lease only provides for attorney fees to IBF, RCW 4.84.330 makes this provision reciprocal. Accordingly, because we vacate the judgment against Heuft, she is the prevailing party. Heuft is entitled to attorney fees both below and on appeal.
WE CONCUR: SCHINDLER, A.C.J., and AGID, J.
NOTES
[1] The relevant provision of the lease at issue in Community Invs. read:

If lessee shall be in default for more than twenty (20) days after receipt of lessor's notice specifying such default, lessor may declare the term ended and re-enter the leased premises with or without process of law.
Community Invs., 36 Wash.App. at 37, 671 P.2d 289.
That court noted that "[t]his is a clear reference to the unlawful detainer statute. The parties validly having contracted in their lease for a longer time period than the statute provides are bound by that provision." Community Invs., 36 Wash.App. 34, 37, 671 P.2d 289 (citing Income Properties Inv. Corp. v. Trefethen, 155 Wash. 493, 284 P. 782 (1930)).